### BENNEDSEN v. NELSON, Sheriff, et al.

(District Court, D. Minnesota, Fourth Division. October 28, 1924.)

**Aliens ⊛≈39—Act giving president power during war to impose restrictions on entry of aliens continued in force by other legislation.**

Petitioner entered the United States clandestinely from Canada, in July, 1924. Act May 22, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1923, §§ 7628e–7628h), provided that, while the United States was at war, the President should be authorized to impose restrictions upon the entry of aliens into the United States, or upon their departure therefrom. By appropriate action, President Wilson restricted the entry from Canada of hostile aliens only, unless on presentation of passport duly viséed by a proper officer of the United States. Held, that Act March 2, 1921, § 1 (Comp. St. Ann. Supp. 1923, § 7628hh), continued in force indefinitely into the peace period, Act May 22, 1918, including the penal provisions thereof, in so far as the same related to requiring passports and visés from aliens seeking to enter the United States. Thereafter it was lawful to impose restrictions upon all aliens seeking to enter the United States and to impose penalties for a violation thereof.

Habeas Corpus. Petition of Thomas Alfred Bennedsen against Anton Nelson, Sheriff of Polk County, Minn., and Abraham Clegg, Immigration Inspector, for writ of habeas corpus. On order to show cause. Writ denied, and order discharged.

Grady & Fosmark, of Crookston, Minn., for petitioner.

Lafayette French, Jr., U. S. Atty., and George A. Heisey, Asst. U. S. Atty., both of St. Paul, Minn., for respondents.

CANT, District Judge. This matter came on for hearing on an order to show

cause why a writ of habeas corpus should not issue as prayed for in the petition herein. The petitioner is an alien, but is not a hostile alien, and during the month of July last he entered the United States from the Dominion of Canada without the presentation of any passport. Shortly thereafter he was arrested by officers of the United States and is now in custody. The writ of habeas corpus should issue, "unless it appears from the petition itself that the party is not entitled thereto." U. S. Revised Statutes, § 755 (U S. Compiled Statutes, § 1283). Does such want of merit appear from the petition?

1. By chapter 81, Act May 22, 1918, 40 Statutes at Large, 559 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 7628e–7628h), Congress provided as follows:

"That when the United States is at war, if the President shall find that the public safety requires that restrictions and prohibitions in addition to those provided otherwise than by this Act be imposed upon the departure of persons from and their entry into the United States, and shall make public proclamation thereof, it shall, until otherwise ordered by the President or Congress, be unlawful—

"(a) For any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President shall prescribe."

Section 3 (section 7628g) of said act provides substantial penalties for a violation of any of the provisions thereof and for the violation of any order or proclamation of the President promulgated, or of any permit, rule, or regulation issued thereunder. Pursuant thereto and on August 8, 1918, President Wilson issued a proclamation and supplemental thereto an executive order, providing that hostile aliens should not be permitted to enter the United States from Canada, except upon the production of a passport duly viséed by a diplomatic or consular officer of the United States. Said executive order further provided that no passports to enter the United States from Canada should be required of persons other than hostile aliens.

2. On November 10, 1919, Congress passed the act of that date, known as chapter 104, 41 Statutes at Large, 353 (Comp. St. Ann. Supp. 1923, §§ 7628i–7628m). At this time it was believed that the formal ending of the war was near at hand.

The act last referred to was in the main a re-enactment of the Act of May 22, 1918, but with the following special features: (a) The words found in the earlier act, "When the United States is at war," were stricken out. (b) By its own terms the act expired by limitation on March 4, 1921. (c) In various of its provisions, the act specifically mentioned passports and visés. This act evidenced the legislative intent that the policy of regulation and restriction of immigration should not be limited to the war period, but should be extended into the period of reconstruction.

3. By chapter 113, Act of March 2, 1921, 41 Statutes at Large 1205, at 1217, § 1 (Comp. St. Ann. Supp. 1923, § 7628hh), it was provided as follows:

"The provisions of the act approved May 22, 1918, shall, in so far as they relate to requiring passports and visés from aliens seeking to come to the United States, continue in force and effect until otherwise provided by law."

Having in mind the historical setting of this act, it is clear that Congress thereby intended to extend the policy of regulation and restriction of immigration into the then at hand peace period and for an indefinite time in the future.

An inspection of the Act of May 22, 1918, will disclose that while it speaks of permits to enter the United States and of evidences of such permission, no specific mention is therein made of passports or visés. In working out the purposes of the act, President Wilson by executive order specified the use of passports and visés as effective means to be employed. Taken literally, therefore, the language above quoted from the Act of March 2, 1921, was inaccurate but was easily understood. It was "the provisions of the act" which were continued in force—not the provisions of any proclamation or executive order. The meaning was to revive and continue those parts of the act which supported and authorized regulation and restriction through the use of passports, visés, and other permits.

4. If, as above indicated, the purpose of the Act of March 2, 1921, was to carry forward indefinitely into peace times the policy of regulation and restriction with respect to immigration, and if that purpose was to be effected, it was necessary that there be a body of immigrants to which the act would apply, and Congress must have so understood and intended.

So far as we are here concerned, President Wilson's restrictions and limitations applied only to hostile aliens. If those re-

strictions and limitations were to remain unchanged, the advent of peace would leave the law high and dry, with no class of aliens upon which it could operate, and the evident purpose of Congress would thus be wholly defeated. At the time the Act of March 2, 1921, announcing a definite policy for the future with respect to immigration, was passed, it was generally believed that a state of war and the existence of hostile aliens would almost immediately become things of the past. The evident purpose of Congress was that thenceforth, as a matter of broad policy, the law should apply to immigrants generally and should not necessarily be limited to hostile aliens only.

5. On March 3, 1921, by joint resolution, Congress declared that certain war time legislation which included the Act of May 22, 1918, should be construed and administered as if the war had terminated on the date when the resolution became effective. This is probably of no special importance here.

6. Assuming to act in harmony with the Act of March 2, 1921, and to effectuate its purpose, President Harding, on February 1, 1922, amended the executive order of President Wilson above referred to, and bearing date August 8, 1918, by requiring all aliens of the class with which we are here concerned, to present duly viséed passports as a condition to their entry into the United States. Of this order the court takes judicial notice, as it does of that issued by President Wilson.

7. The petitioner claims that he is wrongfully deprived of his liberty for the reason that in passing the Act of March 2, 1921, Congress adopted the provisions of the executive order of President Wilson; that therefore the act applied to hostile aliens only; that no change or modification of such executive order was contemplated and no provision was made therefor; that by reason of the foregoing the executive order of President Harding was a nullity; and that the petitioner, not being a hostile alien, should be released.

8. The ultimate questions presented for determination in this case are: (a) Was the executive order of President Harding an invalid order? (b) By the Act of March 2, 1921, did Congress intend to carry forward the penal provisions of the Act of May 22, 1918? If these questions should be answered in the affirmative, the petitioner is lawfully deprived of his liberty, and the writ should not issue. If they, or either of them, should be answered in the negative, the writ should issue. The two questions are somewhat interrelated. We are concerned throughout with the legislative intent.

9. With respect to the executive order of President Harding, the history of the legislation and the considerations already referred to are persuasive to the effect that Congress did not say or intend to say that it adopted the executive order of President Wilson as a part of the act, and did not intend to nullify the law by tying the hands of the succeeding Presidents with respect to the subject-matter involved.

10. As to whether, by the Act of March 2, 1921, Congress intended to carry forward the penal provisions of the Act of May 22, 1918: As already indicated, the reference to passports and visés in the Act of March 2, 1921, amounted to reading into the more general terms of the Act of May 22, 1918, the specific means or instrumentalities which the President had adopted in carrying out the terms of the latter act. Congress also knew that in the re-enactment of that act in the Act of November 10, 1919, the words "passports" and "visés" were used.

By the Act of March 2, 1921, Congress intended to enact effective legislation. The Act of May 22, 1918, provides that certain entries into the United States shall be unlawful. It makes no provision for deportation in case of a violation of the law. It provides for a criminal prosecution and for the imposition of a penalty. If then, on reviving the law by the Act of March 2, 1921, the penalty was not to be carried forward, the act would be nugatory. No such thing could have been intended.

Again, the Immigration Act of 1924 (Act May 26, 1924, 43 Stat. p. 153), makes no specific provision for prosecuting those who unlawfully enter the United States. It evidently assumes that the Act of March 2, 1921, carried forward that part of the Act of May 22, 1918, which covered that point. In sections 16 and 22, the act of 1924 brings forward practically all the other penal provisions of the act of 1918. It covers many offenses which are merely accessory or subordinate to that of unlawfully entering the United States, but makes no specific provision with reference to prosecutions for such entry. It is not possible that Congress intended that the main offense was to go unpunished, and there is no necessity for concluding that it did so intend. The Act of March 2, 1921, carried forward whatever was necessary to give those provisions force and effect. Such must have been the

legislative construction of the various acts of Congress hereinbefore referred to. By section 25 of the Immigration Act of 1924, provision is made whereby the penal provisions of other immigration laws are to be recognized, preserved, and enforced.

Both questions should be answered in favor of the government. It therefore appears from the petition that the writ should be denied; and it will be so ordered.